

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| STEVE COX, | ) |
| | ) |
| Appellant, | ) WD81748 |
| | ) |
| v. | ) OPINION FILED: |
| | ) February 13, 2019 |
| CITY OF CHILLICOTHE AND | ) |
| RICK KNOUSE, | ) |
| | ) |
| Respondents. | ) |

**Appeal from the Circuit Court of Livingston County, Missouri**
The Honorable Daren L. Adkins, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin,
Judge and Gary D. Witt, Judge

Appellant Steve Cox ("Sheriff")[1] appeals the judgment of the circuit court of

Livingston County, finding in favor of defendants City of Chillicothe ("City") and Rick

Knouse ("Chief")[2] (collectively, the "Defendants") on Sheriff's Second Amended Petition

following a bench trial.  Counts I and II of the Petition alleged damages for violations of

---

[1] Steve Cox was the Livingston County Sheriff at the relevant time.  While he brought this action in his individual capacity for ease of reference we refer to him as Sheriff throughout this opinion.

[2] Rick Knouse was the Chief of Police for the City of Chillicothe during the relevant time.  While the action is brought against him in his individual capacity for ease of reference we refer to him as Chief throughout this opinion.

Missouri's Sunshine Law, section 610.010, *et seq.*[3] ("Sunshine Law") for unlawfully disclosing the contents of a 911 tape and Count III alleged negligence and negligence *per se* for the disclosure of the contents of the 911 tape. On appeal, Sheriff only challenges the judgment as to Counts I and II and raises nine allegations of error by the circuit court. There is no allegation of error as to the Defendants' verdict on Count III so we will not address it further. We affirm.

### Factual Background[4]

During all relevant events Sheriff was the elected sheriff of Livingston County, Missouri. Chillicothe is the county seat of Livingston County. At all relevant times Chief was the chief of police for the City of Chillicothe. On September 18, 2014, at approximately 10 p.m. Clifford Hampton ("Hampton") attempted to repossess Sheriff's personal vehicle from Sheriff's home. Sheriff's home is located in Livingston County, but outside of the limits of the City of Chillicothe. The home has a driveway that is approximately one-hundred yards long. Sheriff was standing on the back steps of his home when he saw Hampton's vehicle approaching. Hampton informed Sheriff that he was there to repossess the vehicle. Sheriff informed Hampton that he was trespassing and ordered him to leave the property. After some contentious interaction between the two, Hampton eventually left Sheriff's property.

---

[3] All statutory references are to the Revised Statutes of Missouri 2016, as currently updated, unless otherwise indicated.
[4] In an appeal of a bench-tried case, we view the evidence in the light most favorable to the verdict. *Pearson v. AVO Gen. Servs., LLC*, 520 S.W.3d 496, 500 n.1 (Mo. App. W.D. 2017).

Immediately following the encounter, Hampton placed a call to 911. The 911 call was received by Chillicothe Police Department Dispatcher Wanda Urton ("Urton").[5] Hampton reported that Sheriff had threatened to unlawfully arrest him, to "kick his ass," to unjustifiably shoot him, and that Sheriff had reached into Hampton's vehicle and attempted to physically remove Hampton from the vehicle. After confirming with Urton that Sheriff was in fact the elected sheriff of Livingston County, Hampton stated that he was going to speak with his attorney the following day and would be suing the county. The call was recorded ("911 Recording"). After the call was completed, Urton emailed the supervising dispatcher, Cindy Hanavan ("Hanavan"), notating the time of the call and its location within dispatch records. Urton also advised the second dispatcher, Karri Curnow, as well as Livingston County Sheriff Deputy, Nicholas Leadbetter, of the contents of the call. According to her testimony, Urton made the disclosures of the allegations contained in the call "for officer safety reasons" but did not play the 911 Recording for anyone.

The next morning, Hanavan played the 911 Recording for Chief. Chief, in turn, contacted Livingston County prosecutor Adam Warren ("Prosecutor"), who thereafter listened to the 911 Recording in Hanavan's office, and was provided with a copy of the 911 Recording. Chief also played the 911 Recording for Livingston County Commissioner Ken Lauhoff ("Commissioner Lauhoff"), because during the call Hampton discussed civilly suing Livingston County. The trial court found that Chief "possibly" played the 911

---

[5] The 911 call center for Livingston County was staffed and operated by dispatchers from the City of Chillicothe under an agreement between the County and the City.

3

Recording for other City of Chillicothe police officers and that Chief testified that, to the extent it was done, it was for "officer safety reasons."

Hanavan also played the 911 Recording for Livingston County Commissioner and 911 Advisory Board member Eva Danner-Horton ("Commissioner Danner-Horton") at Commissioner Danner-Horton's request.

Prosecutor referred the matter to Missouri Highway Patrol for investigation. Hanavan also played the 911 Recording for Missouri Highway Patrol Corporal Anders in conjunction with that investigation.

The court found that while others alleged that the 911 Recording was also played for them, such testimony was "inconsistent, incompatible, inconclusive, speculative, and hearsay. . . ."

Sheriff alleged that the disclosures of the 911 Recording to these various individuals violated the Sunshine Law and caused him personal embarrassment and substantial injury. As such, he brought suit against the City and Chief alleging various violations of sections 610.010 thru 610.150 of the Sunshine Law. Specifically, Count I sought recovery for the Defendants' alleged violation of section 610.150, Count II sought recovery for the alleged violation of section 610.100.2, and Count III sought recovery based on theories of negligence and negligence *per se* for the Defendants' alleged violation of their duty's pursuant to the Sunshine Law. Sheriff sought actual and punitive damages as well as statutory damages and penalties including attorney fees and costs.

Following a bench trial, the circuit court made a factual finding that neither Chief, nor any person associated with the City had knowledge that the disclosure of the 911

4

Recording to the individuals in question violated the Sunshine Law. Nor was there any evidence that Chief or any person associated with the City purposefully violated any section of the Sunshine Law. Finding that there was no knowing or purposeful violation, the circuit court found that Sheriff could not recover damages for any alleged violations of the Sunshine Law. The circuit court ruled for the Defendants on Count III on other grounds not relevant to this appeal. The circuit court found for the Defendants on all counts ("Judgment").

## Standard of Review

We review a bench-tried case under the standard provided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "This Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law, accepting all evidence and inferences therefrom in the light most favorable to the prevailing party and disregarding all contrary evidence." *Essex Contracting Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 652 (Mo. banc 2009). "Further, on appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id*. (internal quotation and alteration omitted).

"The scope of the application of section 610.010 to section 610.200 'shall be liberally construed and their exceptions strictly construed to promote' the public policy of *open records*." *Laut v. City of Arnold*, 491 S.W.3d 191, 196 (Mo. banc 2016) (quoting

5

section 610.011)(emphasis added). "But where, as here, the issue is whether a penalty and attorney's fees should be imposed, the 'portions of the Sunshine Law that allow for imposition of a civil penalty and an award of attorney fees and costs are penal in nature and must be strictly construed.'" *Id.* (quoting *Strake v. Robinwood W. Cmty. Improvement Dist.*, 473 S.W.3d 642, 645 n.5 (Mo. banc 2015)). "Whether the conduct of the [defendant] brings it within the scope of the statutory definitions of knowing or purposeful conduct is a question of fact." *Id.* "Under that standard, it [is] up to the trial court, as fact finder, to determine whether the city officials' conduct was knowing or purposeful as those terms are used in section 610.027 . . . ." *Id.*

## Discussion

The purpose of the Sunshine Law is to insure "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." Section 610.011.1. Sheriff in this suit seeks not to force the City to open records to the public but, instead, seeks damages from the Defendants for failure to keep records closed to the public. Sheriff raises nine allegations of error on appeal.

## I.

Sheriff's Point Relied On I alleges that the circuit court erred in finding that section 610.027 afforded him no remedy for the Defendants' alleged violations of section 610.150 and 610.100.2. Sheriff contends that under sections 610.150 and 610.100.2 of the Sunshine Law, the Defendants were prohibited from sharing the 911 Recording. Section 610.150 states:

6

> Except as provided by this section, any information acquired by a law enforcement agency or a first responder agency by way of a complaint or report of a crime made by telephone contact using the emergency number, "911," shall be inaccessible to the general public. However, information consisting of the date, time, specific location and immediate facts and circumstances surrounding the initial report of the crime or incident shall be considered to be an incident report and subject to section 610.100. Any closed records pursuant to this section shall be available upon request by law enforcement agencies or the division of workers' compensation or pursuant to a valid court order authorizing disclosure upon motion and good cause shown.

Section 610.100.2(2) states, in relevant part, that "investigative reports of all law enforcement agencies are closed records until the investigation becomes inactive." Specifically, Sheriff alleges that Hanavan's disclosure of the 911 Recording to Commissioner Danner-Horton and Chief's disclosure of the 911 Recording to Commissioner Lauhoff each constituted separate violations of both section 610.150 and section 610.100.2 because those persons, in their capacities at the time of the disclosure, were members of the "general public" under section 610.150 and the 911 Recording was a part of the investigative report and thus a closed record under section 610.100.2.

Sheriff alleges that he is entitled to statutory damages for the Defendants' alleged violations of section 610.150 and 610.100.2 solely by application of Section 610.027. Specifically, Sherriff contends that, although there is no civil right to recovery of damages under section 610.150 or section 610.100.2, the requirements of those sections are incorporated into section 610.021 which states that, "to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent that they relate to . . . (14) Records which are protected from disclosure by law[.]" Thus, Sheriff argues that a violation of section 610.150 or section 610.100.2 is

7

a violation of section 610.021(14). Because Section 610.027 allows the recovery of monetary damages for violations of the requirements of sections 610.010 to 610.026, Sheriff contends that a party can recover damages for the violation of section 610.150 or section 610.100.2 through application of section 610.021(14) which then allows recovery of damages pursuant to section 610.027. We find this argument to be without merit.

Section 610.021 limits its application by its opening phrase: "Except to the extent *disclosure* is otherwise required by law, a public governmental body is *authorized to* close meetings, records and votes, to the extent they relate to the following . . . ." (emphasis added). It then proceeds to list 24 classifications of records that, if discussed in a meeting, record, or vote, a public governmental body is authorized to then close the records of such activity. Section 610.021 is a permissive statute that allows, but does not require, a governmental body to close certain meetings, records, and votes.

This interpretation is consistent with the stated public policy of the Sunshine Law, which is to encourage public access to governmental records and punish the failure to properly disclose public records to the public. Section 610.011. However, in this case Sheriff seeks to use the penalty provisions of Chapter 610 for the opposite purpose, to punish the disclosure of governmental records. Under the clear terms of section 610.021, a governmental body cannot be forced to provide the public access to the listed records but this section does not itself punish the opening of such records to the extent a body so chooses. While the Defendants may have been prohibited from disclosing the 911 Recording by application of sections 610.150 and 610.100.2, to apply the penalty and damages provisions of section 610.027 there must have been a violation of sections

8

610.010 through 610.026. Even were section 610.021(14) to be interpreted to incorporate sections 610.150 and 610.100.2, the permissive nature of section 610.021 itself does not allow for a remedy to be sought for the improper disclosure of otherwise closed records under section 610.027.

Instead, a more appropriate reading of these sections of the Sunshine Law is that section 610.027 does not provide a remedy for violations of section 610.150 or 610.100.2. This interpretation is bolstered by looking to section 610.100.8 which provides specific penalties for the improper disclosure of some records. Subsection 8 states that any person who requests and receives a mobile video recording pursuant to section 610.100 is prohibited from displaying or disclosing the recording or any description or account thereof and expressly states that "[a]ny person who fails to comply with the provisions of this subsection is subject to damages in a civil action proceeding." "It is well settled, in interpreting a statute, that the legislature is presumed to have acted intentionally when it includes language in one section of a statute, but omits it from another." *Denbow v. State*, 309 S.W.3d 831, 835 (Mo. App. W.D. 2010) (quoting *State v. Bass*, 81 S.W.3d 595, 604(Mo. App. W.D. 2002)). By expressly including the right to civil damages for the improper disclosure of closed records in subsection 610.100.8 but not 610.100.2, the legislature signaled an intent to not provide for civil damages for a violation of subsection 2 of the same section. This principle of statutory interpretation also applies to section 610.150 which similarly lacks any specific authorization for civil damages for the improper disclosure of an otherwise closed record.

We find that the circuit court did not err in finding that section 610.027 provided no remedy for the Defendants' alleged violations of sections 610.150 or 610.100.2. Point Relied on I is denied.

## II.

The Sheriff's remaining eight points on appeal also seek recovery only in reliance on section 610.027. As we find that section 610.027 offers no remedies to Sheriff under this cause of action, we deny Sheriff's remaining points on appeal because, even were we to find the circuit court erred, such error could not be prejudicial given our holding above. To warrant reversal, the circuit court's error must be prejudicial. *Ward v. Kansas City S. Ry. Co.*, 157 S.W.3d 696, 699 (Mo. App. W.D. 2004); *Benton v. City of Rolla*, 872 S.W.2d 882, 886 (Mo. App. S.D. 1994).

## III.

Sheriff requested attorney's fees in the event that he was successful on appeal based on the Defendant's alleged violations of Chapter 610. This motion was taken with the case. Given that we find against the Sheriff on all points on appeal, we now deny his motion for attorney's fees.

## Conclusion

For the reasons stated above we affirm the Judgment of the circuit court and deny Sheriff's motion for attorney's fees.

_____
Gary D. Witt, Judge

All concur

10