

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| KENNEDY JONES, | ) | |
| | ) | |
| Appellant, | ) | WD84771 |
| | ) | |
| v. | ) | OPINION FILED: August 2, 2022 |
| | ) | |
| LEATH & SONS, INC., | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Adam Lyle Caine, Judge

Before Division Three: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick, Judge,
W. Douglas Thomson, Judge

Kennedy Jones ("Jones") appeals from the trial court's judgment which found in

favor of Jones and against Leath & Sons, Inc. ("Leath & Sons") on a claim of statutory

trespass associated with the removal of a curb stop while assessing no damages, and which

found in favor of Leath & Sons on a second claim of statutory trespass associated with the

removal of dirt from Jones' property. Because Jones cannot establish a claim of statutory

trespass for either the removal of the curb stop or for the removal of dirt, and because in

any event, the evidence viewed in the light most favorable to the judgment establishes that

Jones' property was restored by Leath & Sons after dirt was removed, we find no error, and affirm the trial court's judgment.

## Factual and Procedural History

In 2016, the city of Kansas City, Missouri ("the City") hired Leath & Sons to complete a water main replacement project in the 6600 block of Askew Avenue ("the project"). The project required Leath & Sons to remove and replace a one-and-a-half-mile portion of the underground water main, to remove and replace curb stops, and to reconnect the new water main to existing underground service lines for residential properties in the block. Leath & Sons performed its work on the project between April 21, 2016 and May 9, 2016.

Curb stops are narrow, cast iron tunnels which lead from above ground, down to an underground shut off valve. Curb stops are used to control the flow of water from the City's water main to service lines for individual properties, as water service can be turned off by the City using a valve key on the above ground portion of a curb stop. The City owns the water main, service lines leading from the water main to curb stops, and the curb stops. Each property owner serviced by the City's water main owns the service line from the curb stop to the property owner's water meter, and the service line from the water meter to structures on the property.

Jones owns a duplex at 6636 and 6638 Askew Avenue. Each side of the duplex is serviced by a separate water service line connected to a separate water meter. Jones resides at 6636 Askew Avenue. The other side of the duplex, 6638 Askew Avenue, was vacant at the time Leath & Sons performed its work on the project.

2

Jones' water bill for 6638 Askew Avenue was delinquent throughout at least 2015 and 2016. As a result, the City had turned off the curb stop between the City's water main and the service line for 6638 Askew Avenue. The curb stop connected to the service line for 6638 Askew Avenue was thus in the "off" position when Leath & Sons began its work on the project. The City instructed Leath & Sons to leave newly installed curb stops in the "off" position if the old curb stop was in the "off" position.[1]

In order to replace the City owned portion of the water main and underground service lines for 6636 and 6638 Askew Avenue, Leath & Sons excavated a hole directly behind the curb that was roughly six feet wide by seven feet long. In addition, Leath & Sons had to remove old curb stops connected to the service lines for 6636 and 6638 Askew Avenue before installing new curb stops. The new curb stops were installed directly behind the curb. However, the old curb stop for 6638 Askew Avenue that had to be removed was located some distance away from the back of the curb. The new curb stop for the service line to 6638 Askew Avenue was left in the "off" position.

On April 20, 2020, nearly four years after Leath & Sons completed the project, Jones filed a small claims court petition in the Circuit Court of Jackson County alleging trespass and property damage. Jones sought damages for the destruction of the old curb stop connected to the service line for 6638 Askew Avenue, and for the removal of dirt from his property. The small claims court entered judgment in favor of Leath & Sons on July 24, 2020.

---

[1]At properties with active water service, Leath & Sons would test the water after it replaced the service line and curb stop for each property by turning an "outside spigot on to make sure [the water] flushes out clean."

Jones timely filed an Application for Trial *De Novo*. Jones then filed an amended petition ("Amended Petition"). Jones alleged in Count I that Leath & Sons committed statutory trespass in violation of section 537.340 because the City has no utility easement on Jones' property, and Jones did not consent to the work on his property. Jones alleged in Count II that Leath & Sons' statutory trespass caused him property damage because the removal of the old curb stop left him unable to restore water service to 6638 Askew Avenue without installing a new service line and curb stop, and because the excavated area behind the curb had not been restored to the proper grade.[2]

On June 30, 2021, the trial court conducted a trial *de novo*. Jones appeared *pro se*, and argued that Leath & Sons did not have permission to perform any work on his property. Jones introduced four documents which he argued established that the City has no utility easement on his property. These documents were: (i) a subdivision plat executed on May 12, 1920, which notes a three-foot wide right-of-way at the rear of Jones' property for the City to build and maintain the sewer ("Sewer Right of Way"), but which notes no right-of-way at the front of the property; (ii) Kansas City Ordinance No. 23102, passed September 12, 1958, which created a grading easement at the front of his property ("Grading Easement"); (iii) a survey dated July 15, 1988 which noted the Sewer Right of Way and the Grading Easement, but no utility easement; and (iv) a title insurance commitment dated June 21, 1988, which noted as exceptions to title the Sewer Right of Way, the Grading Easement, and an "easement granted to Kansas City Power & Light Company by

---

[2]Jones' Amended Petition also alleged negligence in Count III and loss of property use in Count IV. These counts were dismissed by the trial court because they were claims that had not been asserted in the small claims court action. Jones does not challenge the trial court's dismissal of Counts III and IV of his Amended Petition.

instrument filed January 5, 1925," but that did not note a utility easement. Alternatively, Jones argued that even if there was a utility easement along the curb on his property, the old curb stop that was removed was located well outside the easement.

Jones introduced photographs of the hole excavated behind the curb on his property. He introduced photographs of dirt removed from his property, and placed on a neighbor's property to fill a hole from a removed fire hydrant. Jones introduced photographs of his yard taken on May 9, 2016, which he claimed showed that although the excavated hole behind the curb had been filled, it "was not smoothed back out" and "had humps . . . [and] waves . . . and it was much lower than the original grade of the property."

Jones' photographs also showed three metal objects protruding from the ground on his property at some distance away from the back of the curb. The objects were identified as the water meters for 6636 and 6638 Askew Avenue, and the old curb stop for 6638 Askew Avenue.[3] No evidence was presented to establish exactly how far the old curb stop had been located from the back of the curb. Another photograph was taken after the old curb stop for 6638 Askew Avenue was removed.

Jones claimed he was damaged by Leath & Sons' statutory trespass on his property because he could no longer access the old curb stop and would have to install a new one in order to restore water service to 6638 Askew Avenue. Jones submitted a bid for this work in the amount of $4,803.21. Jones also admitted evidence that the price for a bag of topsoil

---

[3]The old curb stop attached to the service line for 6636 Askew Avenue is not visible in the photos. No claim was asserted by Jones regarding removal of that curb stop.

is $2.47, and that he would need 20 bags to restore the grade of the property along the curb line.

Leath & Sons admitted plans for the project prepared by the City, and stamped and sealed by a City engineer. The plans showed a right-of-way across the front of Jones' property along the curb. Gregory Maupin ("Maupin"), field superintendent for the project, testified without objection that the right-of-way was a "utility right-of-way." Maupin testified that the right-of-way was roughly twelve feet wide calculated from the back of the curb, and that the City owned portion of the newly installed water main, service lines, and curb stops were all installed within the right-of-way. Maupin testified that Leath & Sons relied on the City's plans and on surveyors to determine the boundaries of the right-of-way. Maupin testified that his workers would not have gone beyond the boundaries of the right-of-way to perform work on the project except to replace a water meter, which was not done on Jones' property. Finally, Maupin stated that a City inspector, Wesley Smith ("Smith"), took "measurements on depth of installation of [the] water main, [monitored] how the water main's being installed [and] he's also making sure we're abiding by the plans." Maupin testified that Smith showed up every day, that it was Smith's job to ensure that the project stayed within the right-of-way, and that Smith would have notified Leath & Sons had they extended beyond the right-of-way.

Maupin testified that after the work on the water main was finished, Leath & Sons filled all excavated holes and cleaned up all disturbed areas. Sod was installed, and Leath & Sons hired a subcontractor to water the sod to restore affected property to its pre-project state. After this restoration work was completed, Leath & Sons participated in a final walk-

6

through with the City's inspector and project manager. The inspector and project manager generated a punch list for Leath & Sons which primarily consisted of restoration and cosmetic fixes. However, the punch list did not identify any issues with the restoration work on Jones' property. Leath & Sons completed the punch list, and was paid by the City in September 2017.

Maupin also testified that Leath & Sons provided a three-year maintenance bond for the project, which covered all of the work performed on the project, including property restoration, and which required Leath & Sons to repair any issues identified during the three-year period following substantial completion of the project. However, Jones did not make a claim during that three-year period. Maupin testified that the first time Leath & Sons became aware that Jones had an issue with its work was when the small claims court action was filed in April 2020.

On July 2, 2021, the trial court announced its findings and judgment on the record, and indicated an intent to issue a consistent written judgment. With respect to Count I of the Amended Petition, which sought a finding of statutory trespass, the trial court found that the City had a right-of-way which permitted Leath & Sons to enter Jones' property to perform the project, and that the hole excavated by Leath & Sons behind the curb was within that right-of-way, such that there was no statutory trespass. However, the court found that the old curb stop was located outside of the City's right-of-way, resulting in a technical trespass on Jones' property when the old curb stop was removed. For that reason, the trial court found in favor of Jones on Count I for statutory trespass pursuant to section 537.340. With respect to Count II, which sought damages for statutory trespass, the trial

7

court found that there was no property damage associated with removal of the old curb stop. For that reason, the trial court awarded Jones no damages, and entered judgment in favor of Leath & Sons on Count II. The trial court entered a written judgment accordingly on July 2, 2021 ("Judgment").

On July 28, 2021, Jones filed a timely motion for new trial, which the trial court denied on August 20, 2021.

Jones appeals.

## Standard of Review

"Although this case originated in small claims court and is now before us on appeal after a trial *de novo* in the circuit court, our standard of review is the same as in other court-tried cases." *Kelsey v. Nathey*, 869 S.W.2d 213, 214 (Mo. App. W.D. 1993) (citing *Wampler v. Mueller*, 623 S.W.2d 27, 28 (Mo. App. E.D. 1981)). We will affirm the trial court's Judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *J.N.W. v. Juvenile Officer*, 643 S.W.3d 618, 630 n.9 (Mo. App. W.D. 2022) (quoting *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We accept 'all evidence and inferences therefrom in the light most favorable to the prevailing party and disregarding all contrary evidence.'" *Glasgow Sch. Dist. v. Howard Cty. Coroner*, 633 S.W.3d 822, 828 (Mo. App. W.D. 2021) (quoting *Cox v. City of Chillicothe*, 575 S.W.3d 253, 256 (Mo. App. W.D. 2019)). "We defer 'to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly,

8

but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.'" *Id.* at 828-29 (quoting *Cox*, 575 S.W.3d at 256).

## Analysis

Jones raises two points on appeal. Point One asserts that the trial court erred "as a matter of law and against the weight of the evidence" by ruling in favor of Leath & Sons on Count II and by failing to find in favor of Jones on Count I with respect to the excavated area behind the curb. Jones' point relied on claims that: (1) section 537.340 requires an award of damages regardless the degree of trespass if any part of the property is dug up and carried away; (2) right-of way's must be in writing; (3) exceeding the scope of an easement is a trespass; (4) Leath & Sons had no permission to be on Jones' property; and (5) the trial court's finding that a right-of way existed for utility work constituted a constitutional taking without compensation.[4] Point Two argues that the trial court "erred as a matter of law and against the weight of the evidence" by not awarding Jones any damages for removal of the old curb stop because section 537.340 requires treble damages and an award of costs for the carrying away of any substance from property.

Point One is impermissibly multifarious, "in that [it] contain[s] multiple, divisible claims." *All Star Awards & Ad Specialties, Inc. v. HALO Branded Solutions, Inc.*, 642 S.W.3d 281, 294 (Mo. banc 2022) (citation omitted). "Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review," and they are therefore

---

[4]Jones has not pointed to where in the record he preserved his argument about a constitutional taking, and our review of the record fails to establish that he ever asserted such an argument with the trial court. As a result, this argument is not preserved for our review. *See Sanders v. City of Columbia*, 602 S.W.3d 288, 297-98 (Mo. App. W.D. 2020) ("[A] motion for new trial or to amend a judgment is not required in a court-tried case to preserve an issue for appellate review *if* the matter was otherwise presented to the trial court . . . ." (emphasis added)).

9

subject to dismissal. *Id.* (quoting *Macke v. Patton*, 591 S.W.3d 865, 869 (Mo. banc 2019)). "Compliance with the briefing requirements of Rule 84.04 'is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made.'" *State ex rel. Vandenboom v. Bd. of Zoning Adjustment of City of Kansas City*, 633 S.W.3d 446, 455 (Mo. App. W.D. 2021) (quoting *Crawford Cnty. Concerned Citizens v. Mo. Dep't of Nat. Res.*, 51 S.W.3d 904, 908 (Mo. App. W.D. 2001)). While we have discretion to review Jones' noncompliant Point One, we decline to exercise that discretion beyond *ex gratia* review of the readily discernible arguments raised in the point, which are: (1) whether the trial court erred in finding the existence of a right-of-way permitting Leath & Sons to perform the project in the areas of the excavated hole behind the curb; (2) whether the trial court erred in failing to award Jones damages because Leath & Sons failed to restore the excavated area behind the curb to its original grade; and (3) whether, having found that removal of the old curb stop was outside of the City's right-of-way, the trial court erred in not awarding any damages for statutory trespass pursuant to section 537.340. This latter issue is raised in both Point One and Point Two.

The trial court found that the City had a right-of-way which permitted Leath & Sons to enter Jones' property to perform the project, and that the excavated hole (where the new water main, City owned service lines, and new curb stops were installed) was within this right-of-way. As a result, the trial court found no statutory trespass pursuant to section 537.340 for the work performed by Leath & Sons in the excavated area behind the curb.

Jones quarrels with this finding, but in doing so, ignores our standard of review which requires us to give deference to the trial court's findings on factual issues. There

10

was competing evidence about the existence of a right-of-way permitting Leath & Sons to perform the project. Jones relied on documents to claim that by omission, they established that there was no utility easement along the front of his property. However, the subdivision plat Jones admitted into evidence was dated in 1920. The title commitment Jones admitted was dated in 1988, and expressly noted as exceptions to title "easements, or claims of easements, not shown in the public records." And the survey Jones admitted was also dated in 1988, and expressly noted on its face that it did "not meet all the standards of a survey in accordance with the Minimum Standards for Property Boundary Surveys of the State." In contrast, Leath & Sons admitted contemporaneously dated plans for the project, prepared, stamped and sealed by an engineer, that indicated a right-of-way along the curb line in front of Jones' property. Leath & Sons provided testimonial evidence that the right-of-way was a "utility right-of-way" with an approximate width of twelve feet from the back of the curb. Though a source document creating the right-of-way depicted in the City's sealed and stamped plans would have been an even more persuasive means by which the utility easement could have been proven, we cannot say that the trial court erred in weighing the competing evidence to conclude that the City had a utility right-of-way that permitted Leath & Sons to perform its work on the project. We defer to that factual finding. *Glasgow Sch. Dist.*, 633 S.W.3d at 828 (quoting *Cox*, 575 S.W.3d at 256). The trial court did not error in finding that the work performed in the excavated area behind the curb was within the City's right-of-way, and was not a statutory trespass pursuant to section 537.340.

11

The second issue Jones raised in Point One is his claim that the trial court erroneously failed to award Jones damages pursuant to section 537.340 because Leath & Sons failed to restore the original grade on his property in the area where the large hole was excavated. We disagree.

Section 537.340.1 states:

> If any person shall cut down, ***injure or destroy or carry away any tree*** placed or growing for use, shade or ornament, ***or any timber, rails or wood standing***, being or growing on the land of any other person, including any governmental entity, ***or shall dig up, quarry or carry away any stones, ore or mineral, gravel, clay or mold, or any ice or other substance or material being a part of the realty, or any roots, fruits or plants, or cut down or carry away grass, grain, corn, flax or hemp*** in which such person has no interest or right, standing, lying or being on land not such person's own, ***or shall knowingly break the glass or any part of it in any building*** not such person's own, the person so offending shall pay to the party injured treble the value of the things so injured, broken, destroyed or carried away, with costs. Any person filing a claim for damages pursuant to this section need not prove negligence or intent.

(Emphasis added.) "Section 537.340[] is a penal statute and must be strictly construed." *Ridgway*, 26 S.W.3d at 435-36 (citing *Fondren v. Redwine*, 905 S.W.2d 156, 157 (Mo. App. E.D. 1995)).

Because the trial court found no violation of section 537.340 with respect to Leath & Sons' work in the City's right-of-way, the trial court could not have awarded damages pursuant to section 537.340 as a matter of law. Even if it could have done so, (a finding we do not make), the trial court heard competing evidence about the restoration of Jones' property where excavation occurred in the right-of-way. The trial court was free to resolve this competing evidence in Leath & Sons' favor.

12

The third issue Jones raises in Point One challenges the trial court's failure to award statutory damages pursuant to section 537.340 for the determined trespass that occurred when the old curb stop was removed. We disagree.

Jones' Amended Petition did not assert a common law trespass claim, and instead asserted a claim for statutory trespass under section 537.340. A cause of action for statutory trespass pursuant to section 537.340 differs from a cause of action for common law trespass. *Ridgway v. TTnT Dev. Corp.*, 26 S.W.3d 428, 435-36 (Mo. App. S.D. 2000) (citing *Porter v. Fitch*, 727 S.W.2d 161, 164 (Mo. App. W.D. 1987)). Section 537.340 only permits redress for specific acts of trespass, and, as noted above, is to be strictly construed. "Aside from the breaking of glass, specifically noted in the statute, [section 537.340] deals *exclusively* with natural items found on real property." *Int'l Bhd. of Elec. Workers v. Monsees*, 335 S.W.3d 105, 109-110 (Mo. App. W.D. 2011) (emphasis added) (holding that because section 537.340 must be strictly construed, "the statute simply cannot be read to apply to the removal of a sign from real property").[5] Because a cast iron curb stop is neither glass nor a natural item, its removal from Jones' property is not contemplated

[5]"Statutory trespass attempts to redress plaintiff for injuries that often have intangible qualities, such as aesthetic value, and such damages are often difficult to measure." *Int'l Bhd. of Elec. Workers v. Monsees*, 335 S.W.3d 105, 109 (Mo. App. W.D. 2011) (quoting *Hale v. Warren*, 236 S.W.3d 687, 698 (Mo. App. S.D. 2007) (treble damages imposed for bulldozing several large and long-standing trees and shrubs)); *see also Raymond v. Young*, 272 S.W.3d 452, 453-55 (Mo. App. W.D. 2008) (treble damages should have been awarded where construction company contracted by county to construct a bridge removed three trees on appellant's property which were not located in the right-of-way, and where there was no evidence suggesting construction company had reasonable belief that it had the right to remove the trees); *Segraves v. Consol. Elec. Co-op.*, 891 S.W.2d 168, 170-71 (Mo. App. E.D. 1995) (electrical company exceeded the scope of any potentially acquired easement by estoppel when it cut down a mulberry tree and "topped off" of a cherry tree where the trees were not presently interfering with electrical service); *Lewis v. Mason*, 561 S.W.3d 443 (Mo. App. W.D. 2018) (removal of timber); *Henry v. Lowe*, 73 Mo. 96, 99 (Mo. 1880) (coal is a "mineral" within meaning of version of statute in place in 1880); *Fezler v. Gibson*, 166 S.W. 1096, 1098 (St. Louis Ct. App. 1914) ("plants" as used in version of statute in place in 1914 includes "any and all plants"); *Keller Farms, Inc. v. McGarity Flying Serv., LLC*, 944 F.3d 975, 980 (8th Cir. 2019) ("crops" expressly included in section 537.340.1; however, in order to state a claim for relief under the statute, crops must be dug up, cut down, or carried away, and not merely injured by herbicides).

by section 537.340.1. As a result, Jones' claim that section 537.340 required an award of damages for removal of the old curb stop is without merit. [6]

Jones' Point One on appeal is denied.

Because Point Two on appeal repeats the argument that section 537.340 damages and costs should have been awarded for removal of the old curb stop, a claim we have already disabused, Point Two on appeal is denied.

Though Jones's points on appeal are denied, we are mindful of Jones' contention that when Leath & Sons removed the old curb stop, the City's old shut off valve was left intact in the "off" position, several feet underground, on the service line Jones believes remains connected to the newly installed water supply infrastructure. The evidence at trial did not establish whether the old shut off valve is attached to the service line that remains connected to the newly installed water supply infrastructure. Until Jones resolves his dispute with the City about the unpaid water bill for 6638 Askew Avenue, the new shut off valve installed under the new curb stop will not be turned on by the City. And until the new shut off valve is turned on, it cannot be confirmed whether the old shut off valve will

---

[6]As a result, the trial court should not have concluded that Leath & Sons committed a statutory trespass on Jones' property by removal of the old curb stop. However, Leath & Sons did not file a cross appeal challenging the entry of judgment in Jones' favor on Count I based on removal of the old curb stop. Regardless, it is Jones who bears the burden to establish legal error in the trial court's failure to award damages pursuant to section 537.340 for removal of the old curb stop. He cannot do so, as curb stops are not contemplated by the statute. Though the trial court refused to award damages for removal of the old curb stop on an alternative basis (having found there was no property damage by virtue of removal of the curb stop), we are "primarily concerned with the correctness of the trial court's judgment rather than the route taken to reach it." *Sherman v. Mo. Prof'ls Mutual-Physicians Prof'l Indemnity Assoc.*, 599 S.W.3d 207, 220 n.8 (Mo. App. W.D. 2020) (citing *McQueen v. Gadberry*, 507 S.W.3d 127, 138 (Mo. App. E.D. 2016)). "Thus, the trial court's judgment will be affirmed if the appellate court determines that the trial court reached the correct result regardless of whether its proffered reasons are wrong or insufficient." *Id.* (citing *McQueen*, 507 S.W.3d at 138).

14

prevent water from being supplied to 6638 Askew Avenue because it is attached to a service line that remains connected to the newly installed water supply infrastructure.

Should Jones' concern materialize in the future, Jones will need to address the provision of water service with the City, which is not a party to this case. In the meantime, Jones' concern about whether the old shut off valve will impede the future provision of water service to 6638 Askew is not relevant to his statutory trespass claims against Leath & Sons.

## Conclusion

The trial court's Judgment is affirmed.

_____Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

15